EVANS v. MANSUR & TEBBETTS IMPLEMENT CO. et al.

(Circuit Court of Appeals, Fifth Circuit. April 26, 1898.)

No. 634.

1. FRAUD—EVIDENCE OF COMPLICITY.

Where one, who was doing a large business, and was considered solvent and prosperous, borrowed money at a time when his financial affairs were hopelessly involved, and only two days before executing a trust deed of all his property (alleged to have been in fraud of certain creditors), the facts that the lender was, and had been for several years, the borrower's attorney; that he already held his note, long overdue, for borrowed money; and that he drew up the deed of trust, under which he was one of the preferred creditors only two days later,—are not conclusive that the lender knew of the borrower's financial condition when he made the loan, or that he was a party to the fraud, when such knowledge and complicity are denied by both borrower and lender.

2. TRUST DEED—ATTORNEY'S FEES.

Where a conveyance of property in trust to pay certain debts does not provide for the addition of attorney's fees to such debts, such fees should not be allowed, although stipulated in the notes which are the evidence of certain of the debts.

Appeal from the Circuit Court of the United States for the Northern District of Texas.

On December 3, 1896, one W. E. Dupree executed a deed of trust, by which he conveyed, for the benefit of his creditors, his goods, wares, merchandise, and other personal property described in the deed of trust. The deed of trust divided the creditors into three classes, A, B, and C; the total amount of claims intended to be secured being $211,611.98. William W. Evans, the intervener herein, was included in class A; and provision was thus made for payment to him of a debt of $3,518, represented by notes. The deed of trust provided that the trustee should sell the property conveyed, and that if the proceeds of the sale should be insufficient to pay all the creditors, a certain claim of the Provident National Bank of Waco, Tex., should first be paid by preference, and the remainder of the proceeds of sale should then be divided pro rata among the creditors composing class A, which, as already stated, included the claim of the intervener, Evans. On December 5, 1896, the Mansur & Tebbetts Implement Company and the Washburn & Moen Manufacturing Company filed their bill in the circuit court of the United States for the Northern district of Texas, at Waco, against Dupree and one J. C. Birkhead, the trustee, and the Provident National Bank; setting up, among other things, the execution of said deed of trust, and the provisions thereof; estimating the value of the property not to exceed the sum of $65,500, and alleging that the time within which such property must be sold by Birkhead was insufficient to permit a prudent and fruitful administration of the trust conferred on him, and, on account of the character of goods conveyed to him therein, that the same could not be marketed for a fair price, for cash, within the next ensuing five months: charging a combination between Birkhead and Dupree in the making of said deed of trust; that Birkhead was a man of small means, and that by the terms of said instrument he was not required to give bond to secure the beneficiaries under the deed of trust for a faithful administration of his trust; that suits by creditors had been insti-

tuted against Dupree, and writs of attachment issued thereon. and that the same had been levied and attempted to be levied upon the goods conveyed by the instrument, not by seizure and appropriation, but by giving notice to Birkhead and his employés in charge and custody of the property; that writs of garnishment against Dupree were sued out in different courts of McLennan county, Tex., and served upon Birkhead and his employés in charge of said assets and property; and alleging that controversies have arisen and will arise between the attaching creditors and garnishing creditors of Dupree; that the assets and property conveyed in said deed of trust were not sufficient in value to pay off the expense of administering the trust and ,the debts in Exhibit A of said instrument, and also pay off and discharge in full the debts mentioned, including the debts of the complainants, who are in class B, and will not pay the complainants and other creditors in class B more than 50 per cent. of their claims. The bill charges combination and confederacy between Dupree and Birkhead; that, unless restrained by injunction, Dupree and Birkhead will, acting together and in concert, take from the assets and property conveyed to Birkhead by the provisions of said trust deed a sufficient sum of money to pay off and discharge the debt due by Dupree to the Provident National Bank, and will cancel and discharge said debt, and that Birkhead will turn over and deliver to Dupree the collateral securities which the Provident National Bank holds to secure the payment of this debt, unless enjoined from so doing. The bill further prays for the appointment of a receiver to take charge of, and administer under the orders of the court, the assets and property of every kind conveyed by the deed of trust, as well as the collateral securities held by the Provident National Bank, and that the property be administered and the proceeds thereof be distributed under the orders of the court, and the receiver be required to collect the collaterals, and that the same be applied, by proper orders of the court. towards the payment of the debt first due to the Provident National Bank, and that complainants' claims be established and declared a lien upon the funds in the hands of the receiver, according to the priorities that may be established therein, and that all parties entitled to participate in said fund be required to intervene therein and establish their rights thereto, and that the injunction therein prayed for might be perpetual.

On this bill of complaint, the judge of the United States circuit court appointed a receiver of all the property covered by the deed of trust, or held by the Provident National Bank as security for Evans' debt to it. The injunction prayed for was also granted. On December 6, 1896, the receiver qualified and took possession. Thereafter, W. B. Belknap & Co. filed their bill of complaint, asking for the removal of Birkhead as trustee, and for a receiver of all the properties which by a chattel mortgage of date December 3, 1896, Dupree conveyed to Birkhead as trustee; also, of the property held by the Provident National Bank as collateral security; and also of property held by one S. W. Slayden and one J. B. Baker as collateral security,—the last two not being defendants in the original bill. The court thereupon ordered that F. F. Fink, who had previously qualified as receiver in the cause in which the Mansur & Tebbetts Implement Company et al. are plaintiffs, be also appointed receiver under the bill filed by W. B. Belknap & Co. Subsequently, as shown by three orders, the court directed that all persons interested be granted leave to intervene in the proceedings, without further leave of court, subject to exception; that all interventions, without further order, be referred to a standing master of the court named in the order; and that the master report on the law and facts of all interventions.

The intervener herein, W. W. Evans, filed his petition of intervention, setting up that on March 7, 1896, the defendant W. E. Dupree made and delivered to him his promissory note for the sum of $1,000, payable at Waco, Tex., 60 days after date, bearing interest at the rate of 10 per cent. per annum from date until paid, and providing that if default was made in the payment of said note at maturity, and it was placed in the hands of an attorney for collection, the maker thereof would pay the amount of 10 per cent. additional on the principal and interest of said note as attorney's fees. The intervener further showed that said Dupree on or about the 1st day of December, 1896, for a valuable consideration, made and delivered to the intervener his certain other promissory note for the sum of $2,500, payable at Waco, Tex., 60 days after

the date thereof, and bearing interest at the rate of 10 per cent. per annum from date until paid, and providing for attorney's fees as in the first note. Intervener further showed that he was the legal owner and holder of said notes, and set up the fact that on or about the 3d day of December, 1896, said Dupree made his deed of trust to J. C. Birkhead, as trustee, conveying all of his stock of goods, wares, and merchandise owned by the said Dupree in McLennan, Falls, and Hill counties. Tex., as is fully set out and described in said deed of trust, and that the said Birkhead accepted as such trustee, under the provisions of the said deed of trust, and that, on the application heretofore mentioned, said Birkhead was removed by the court, and Frank F. Fink appointed as receiver in his stead, who qualified as such, and is now acting as such, under the direction of the court. Intervener further showed that in said deed of trust the aforesaid indebtedness due by said Dupree to intervener was secured in class A, as provided for in said deed of trust, and this intervener became invested with a valid and subsisting lien on all the property conveyed in said deed of trust, to secure the payment of said moneys as aforesaid. Intervener further showed that he accepted under the provision of the said deed of trust before any intervening rights of any other creditors attached, and he is now the legal holder and owner of a valid and subsisting lien conveyed in said deed of trust to secure the payment of said moneys. The prayer of his plea of intervention was that the said notes be adjudged to be secured by a valid and subsisting and prior lien on the property conveyed in said deed of trust, and the funds arising from the sale thereof by the receiver in this cause, and that said notes, interest, and attorney's fees be paid. To this petition of intervention the receiver, Frank F. Fink, filed an answer on April 5, 1897, which said answer consisted of a general demurrer and general denial.

A hearing was had before the master on intervener's petition, and testimony taken, and said standing master filed his report in court as to all the claims presented before him for trial under the court's order. Among other things connected with said report is the finding as to claim of intervener, William W. Evans: "No. 83. W. W. Evans, Intervener. This claim is duly verified as required by order of court. Exceptions of complainant overruled. This claim is for two notes,—one for the sum of $1,000, dated May 7, 1896, due sixty days after date, bearing interest at the rate of 10 per cent. per annum, and providing for 10 per cent. attorney's fees; also, a note dated 1st of December. A. D. 1896, for $2,500, due sixty days after date, bearing interest at same rate, and containing the same stipulations,—the two notes aggregating $3,518. I consider the claim a just claim, to be paid as provided in class A. See testimony, pp. 199 to 212, inclusive." The master found, also, among other things, as follows: "I would state that before hearing these causes I notified the parties in interest that I would consider the deed of trust, together with the exhibits thereto attached. set forth in and accompanying complainant's bill, in evidence, in all the cases where they were proper to be used; and I further announced that any evidence heard in any case would be used and considered by me, wherein it was applicable to such other cases."

On the same day that the master's report was filed, the Mansur & Tebbetts Implement Company and the Washburn & Moen Manufacturing Company filed an answer to intervener's petition of intervention, in which they set up: First. That they excepted to the intervening petition, and said the same was insufficient in law. Second. They denied every allegation in the petition. Third. They set up. in substance, that on the 1st day of December, 1896, the defendant W. E. Dupree was insolvent and unable to meet his existing liabilities, and had not property within his possession at that time sufficient to pay his creditors, and had then a large amount of mercantile indebtedness, about to mature and maturing on said date, which said Dupree was wholly unable to pay; that said Dupree on the 1st day of December was preparing, and had for some week or 10 days prior thereto been preparing and arranging his matters, with a view of disposing of all of his property subject to execution for the purpose of placing the same beyond the reach of his creditors; that on the said 1st day of December, 1896, and long prior thereto, the intervener herein had been and was the confidential adviser and attorney of said Dupree, and was fully advised respecting the financial condition of the said W. E. Dupree, and well knew that said Dupree would within a few days strip himself of all property liable

to be taken in execution, and subject by law to the payment of Dupree's indebtedness; that in fact on said 1st day of December, 1896, the plans of the said W. E. Dupree (which were well known to the said W. W. Evans, intervener) for the purpose of disposing of said Dupree's property were well advanced towards maturity, and were certain and definite; that the tangible property of the said Dupree at that time was of such a character as might be taken in attachment or execution or other legal process, and consisted of certain stocks of goods, wares, and merchandise, specifically set forth in bills of complaint filed herein, and of certain real estate in the city of Waco, Tex.; that it was then in contemplation and known to intervener that said Dupree contemplated deeding and conveying his homestead and exempt property in the city of Waco to his wife, in consideration of love and affection; that it was also well known to intervener that the other real-estate property standing in Dupree's name on said 1st day of December, 1896, had been covered by mortgages and securities, either valid or fictitious, and that a large part of such securities were then held by intervener, or were intended by said Dupree and the intervener then to be transferred to the intervener; that while said Dupree was in the condition aforesaid, and on the eve and brink of hopeless insolvency, the said intervener advanced to the said Dupree the sum of $2,500 in cash money, which said Dupree then and there placed in his pocket, and beyond the reach of his creditors, as the said intervener then well knew he would do, and the note for $2,500, set forth in intervener's petition herein, was executed only in consideration for said $2,500 so handed and delivered by intervener to the said W. E. Dupree on December 1, 1896; that on, to wit, December 4, 1896, the said Dupree, in pursuance of his former intention, known to intervener as aforesaid, did convey all and every character of tangible property which he then owned, and placed the same beyond the reach of legal process, and did not leave in his possession in this state sufficient property to pay his then existing indebtedness. They averred that the intervener's claim, as propounded, was fraudulent in law, as to the complainants, who were on December 1, 1896, existing creditors of said W. E. Dupree, and that said claim so propounded was void as to complainants. While, according to their file mark, the foregoing exceptions and answer of complainants to Evans' intervention would appear not to have been filed until the day on which the master made his report, it is contended that in point of fact they were in the hands of the master when he heard the intervention, and that his findings so show.

The intervener, Evans, excepted to the master's report, as to that part finding that the two notes aggregated the sum of $3,518. The intervener alleged that this was a mistake on the part of the master, in this: that said two notes only aggregated the sum of $3,500, and that both of said notes bore interest from date at the rate of 10 per cent. per annum, and provided also for 10 per cent. attorney's fees, which said notes (principal, interest, and attorney's fees) the intervener understood, from said report, were intended to be allowed by said master as the amount due. Subsequently the Mansur & Tebbetts Implement Company et al. filed exceptions to the master's report, alleging that the master has allowed the claim of the said intervener for the sum of $3,518, whereas said master should have disallowed said claim in toto. They averred, substantially, that the testimony established the charges made in their answer to Evans' intervention, and they alleged, among other things, that it is incredible that Evans, with his means of knowledge, did not, at the time said $2,500 was loaned to Dupree, know that Dupree was then insolvent, and intended to defraud his creditors by the withdrawal of a large part of his assets, in the shape of notes and accounts.

The court heard the exceptions filed by the intervener and the complainants, and on June 26, 1896, entered a final decree overruling complainants' objection to the master's report as to the $1,000 note, and interest thereon, and allowing Evans' claim as to the same, and overruling the master's report as to Evans' claim on the $2,500 note, and interest thereon, and rejecting intervener's entire claims as to attorney's fees; from which action, so far as the same was against him, the intervener, Evans, has appealed. The assignment of errors is as follows: "(1) Because the intervener in this case claimed that the note sued on, and for which he intervened in this cause, to wit, for $2,500, dated December 1, 1896, was given him for a valuable consideration, and at said

time he had no notice, actual or constructive, that said W. E. Dupree, the maker thereof, was insolvent, or contemplated insolvency, but regarded him as perfectly solvent, and good for his debts, and the uncontradicted evidence in this cause shows such to be the case; and when said W. E. Dupree failed on the 3d day of December, 1896, he preferred said Wm. W. Evans for the amount of said debt, in the trust deed executed by him, in class A thereof, and said preference was valid, and a just charge against the property conveyed in said trust deed; and the evidence not only fails to show that the said intervener, Wm. W. Evans, had notice at the time of contracting said debt with said W. E. Dupree that the said Dupree was insolvent, or contemplated insolvency, but conclusively shows that the said Wm. W. Evans had no notice whatever of the insolvency of the said W. E. Dupree, and did not know that he owed any debts at said time; and said indebtedness to said Wm. W. Evans was a valid indebtedness, and constituted a valid charge against the funds in the hands of the receiver in this cause, and should have been so adjudged by the trial court, there being no evidence of any kind or character to authorize the court in finding that said Wm. W. Evans had either actual or constructive notice that said W. E. Dupree was insolvent or contemplated insolvency; and that the evidence showed conclusively that the said transaction was bona fide, and made in good faith by the said Wm. W. Evans, and not with the intention of assisting the said W. E. Dupree in defrauding his creditors. (2) Because the evidence in this cause showed conclusively that the claim of the said Wm. W. Evans was secured in class A in the deed of trust, which created a valid and subsisting lien, to secure payment thereof, on the funds in the hands of the receiver, and should have been so charged and established by the judgment of the court in this cause. (3) This intervener shows that no contest was made of his claim in the hearing before the master appointed to hear and determine the intervention in this cause, and the objections filed in this court were not filed before said master, and he had no opportunity to pass upon the questions raised in this cause by the complainants; and said complainants had no right to raise said questions in this cause, because they were not raised before the master, on the hearing of this intervener, and therefore were waived by complainants. (4) The court erred in refusing to allow attorney's fees provided for in the note in favor of intervener, Wm. W. Evans, secured in class A of the deed of trust, because said attorney's fees were part of the debt secured; and no exceptions were filed, either before the master in chancery, or in the court of final trial, to said attorney's fees, as such, but the exceptions filed by complainants to the claim set up by the intervener were to the whole claim of intervener, on the ground that it was fraudulent, and did not except to the attorney's fees as such."

Geo. Clark and D. C. Bolinger, for appellant.

J. M. McCormick and E. B. Parker, for appellees.

Before McCORMICK, Circuit Judge, and NEWMAN and PARLANGE, District Judges.

PARLANGE, District Judge (after stating the facts as above). The main question in this matter is whether the charges of fraud made by the complainants have been proved by them. Fraud is not presumed, and the party who alleges fraud must prove it. It is true that frequently fraud cannot be proven by direct, affirmative evidence, and that, in order to discover and expose it, resort must be had to circumstantial evidence. But, whether the evidence be direct or circumstantial, the effect of it must be to produce a reasonably clear and distinct conviction that fraud has been committed. Mere suspicions are not sufficient. While it is also true that in civil matters fraud need not be proven beyond a reasonable doubt, yet a charge of fraud should not be fastened on any one, even in a civil matter, unless the proof satisfies the mind. There are frauds

which are closely allied to criminality, and there are crimes of which fraud is an integral part. It is clear that it would be unjust to judicially declare a person to have perpetrated a fraud upon slight proof or bare presumption. With these principles before us, we have carefully examined and considered the evidence, and it has failed to produce upon our minds the effect which it had upon the learned trial judge. The charges of fraud, as we understand them to be set out in complainants' pleadings, are, substantially, that one Dupree was insolvent, and intended to commit a fraud upon his creditors; that Evans, the intervener, knew of Dupree's insolvency and fraudulent intention; and that, for the purpose of assisting Dupree to perpetrate the fraud, the intervener loaned him $2,500, which Dupree appropriated, and which he subsequently secured in class A of the deed of trust. We note that while complainants' pleadings prefer, in effect, a charge of actual fraud, the brief of their counsel virtually concedes that there is no proof supporting such a charge, and limits itself, as we understand it, to an attempt to prove a constructive fraud; that is to say, the complainants now contend that the circumstances existing at the time when Dupree applied to the intervener for the loan of $2,500 were such as to put the latter upon inquiry as to the financial condition and intention of Dupree. These circumstances, as stated in the brief for complainants, are substantially as follows: For several years prior to the loan of $2,500, and at the time the same was made, the intervener was Dupree's attorney. At the time Dupree applied for the $2,500 loan, he already owed the intervener a note for $1,000 and interest, five months past due. The $2,500 loan, represented by a note of Dupree payable in sixty days, was made two days before the deed of trust. When making the second loan, the intervener did not ask Dupree when he would pay the first note, nor did the intervener ask for security as to either loan, nor did he ask Dupree what his financial condition was. The deed of trust was executed on December 3, 1896. On May 28, 1896, Dupree had conveyed to one Birkhead, whom he afterwards made trustee, certain real estate, for $1 cash, and eight notes of $1,000 each. The deed was acknowledged before one J. T. Harrison, a notary public, whose name is signed as attesting witness to the intervener's petition in this cause. About six days before the second loan was made, Dupree conveyed other real estate to Birkhead for $100 cash, and ten notes of $1,000 each. About two weeks prior to the second loan, Dupree conveyed a storehouse to one Pickett, a kinsman of his, for $100 cash, and a note of $5,000. The deed of trust was drawn up by the intervener, as counsel for Dupree; and complainants claim that it shows upon its face evidence of careful preparation, and that it was practically impossible for the intervener to have prepared it in the interval between the moment when it is said that Dupree first informed the intervener that he wished to execute a deed of trust, and the moment when the deed of trust was actually executed. When Dupree borrowed the $2,500, there were notes of his, aggregating a large amount, held for collection by several of the banks of the city of

Waco, and these notes were to fall due in a few days; and the intervener was the attorney for one of these banks, which held Dupree's notes for some $6,000 or $7,000. Dupree told the intervener at the time the second loan was made that he (Dupree) owed the Provident National Bank some money, but he did not say how much. Dupree owed sundry accounts to his butcher, and for other household and office expenses, as also debts to local capitalists. The evidence introduced before the master on the hearing before him of the present intervention consisted only of the following: On the part of the intervener, the two notes, of $1,000 and $2,500, respectively, were offered, as also the deed of trust, and the intervener testified in his own behalf. The complainants offered Dupree as their own witness, and one Kelly, a clerk in one of the banks of Waco. It was admitted by the intervener that the complainants could prove that the several banks in Waco held for collection, at the time the $2,500 loan was made, some $50,000 or $60,000 of Dupree's commercial paper, which was to mature in a few days. We understand that the master, to whom the numerous interventions in the main cause were referred, announced at the outset of the hearings that any evidence heard by him during the hearings would be used by him in any one of the interventions, if applicable thereto. It does not appear that the parties either agreed or objected to this. In the briefs before us, reference is made to evidence which was not introduced at the hearing of the present intervention before the master, but which was introduced in other interventions in the cause. It would seem that, when fraud is charged, the party having the onus upon him should distinctly offer the proof upon which he relies to establish the fraud, so that the party charged may know what the alleged inculpatory evidence is, and may have a fair opportunity to meet it. But, however this may be in the present matter, even upon consideration of all the evidence before us, we are unable to come to the conclusion that the complainants have proven fraud on the part of the intervener. The evidence directly offered on the hearing of the present intervention is brief. The intervener testified in his own behalf, positively and distinctly stating, among other things, that he acted in good faith, with the belief that Dupree was abundantly solvent, and without any knowledge of a fraudulent intention on Dupree's part. The intervener testified that on a number of previous occasions he had loaned money to Dupree; that he would have refused to lend him the money, had he believed him to be embarrassed; that when Dupree came to him, and told him that he wanted to execute a deed of trust, he (the intervener) was as surprised as if one of the most prosperous banks in Waco had applied to him for the purpose. The intervener further said that Dupree came to him with the lists of his creditors already prepared and classified, and the intervener handed them over to his stenographer. Dupree, called by the complainants as their witness, substantiated and corroborated the intervener. Kelly, the only other witness for the complainants, testified that, while the bank in which he was employed held for collection notes of Dupree, he never informed the intervener of that fact; and, as already stated, it was admitted that other banks held Dupree's

notes for collection. The other evidence relied on by the complainants was not directly offered at the hearing, and consisted of the proof, already referred to, that Dupree owed some household, office, and other local debts, and had made certain conveyances of property, one of which antedated the deed of trust by more than six months. The complainants, with the burden of proof upon them, have failed to show knowledge by the intervener of Dupree's condition or intention. There is no proof that the intervener knew of the conveyances of property, or that notes of Dupree, to a large amount, were held by the banks. Even under the restricted charge made in the brief for complainants, there is no proof that the intervener knew of any circumstances which could fairly put him upon inquiry as to Dupree's condition, or intentions. It is urged upon us by the complainants' counsel that it is incredible that Evans, as Dupree's attorney, did not know Dupree's financial condition. This would appear to mean that although both the intervener and Dupree (the latter being complainants' witness) swear that the intervener did not know of Dupree's condition, and although their testimony contains no internal indication of untruth or incorrectness, and is consistent with the other evidence in the cause, yet we should wholly disbelieve it, virtually, on the ground that it is impossible that an attorney should not know the financial condition of his client. This apparently amounts to saying that there is an irrebuttable presumption in such a case. Of course, we cannot agree to such doctrine. The banks which held Dupree's commercial paper for collection, and his other debtors, had no distrust of him. He was evidently doing a large and extensive business, and was considered a prosperous and abundantly solvent business man. But, after Dupree's insolvency was discovered (to the surprise of all who had dealt with him), the complainants seem to have assumed and taken for granted that the intervener necessarily knew Dupree's condition, merely because he was Dupree's attorney. Under all the proof before us, we find in this matter nothing more tangible than a suspicion created merely by the relation between the parties. Complainants' counsel concede in their brief that the intervener is a reputable attorney, in good standing, and they do not charge him with giving false testimony. Yet, even under the restricted contention that the intervener was put upon inquiry, it is plain, in view of the intervener's testimony, that we could not decree against him without finding his testimony false. It is conceded that the intervener paid the $2,500 to Dupree. If we are to deal with mere speculation or possibility, we think it would be extremely improbable, to say the least, that an ordinarily intelligent attorney, even if dishonest, would engage in a fraudulent conspiracy with a client, when the only result which the attorney could hope to attain would be the return to him, by means of perjury, and after hazardous litigation, of the money which he would disburse at the outset of the conspiracy. The intervener had been Dupree's attorney for years. Doubtless he had reason to believe that he would continue to be employed by Dupree. A bare suspicion that the intervener disbursed the $2,500 to obtain preference for the $1,000 previously borrowed, or to be employed as attorney in executing the

deed of trust, and in the proceedings growing out of it, or to enable Dupree to obtain a settlement of his large aggregate indebtedness, of over $200,000, would be entirely unsupported by anything fairly deducible from the evidence before us, and would be, in our opinion, utterly beyond any probability which, under the evidence, could properly be taken into account. A consideration of much weight is that the master, who heard and saw the witnesses, found unhesitatingly in favor of the intervener.

The deed of trust not having provided for attorney's fees on the note, the master was correct in disallowing such fees.

The decree herein, in so far as it rejects the claim of the intervener, Evans, on the note for $2,500 and interest, is reversed, and the cause is remanded to the lower court, with instructions to grant a rehearing, to sustain the master's report as to said claim, and to proceed in accordance with the views herein expressed.